Good morning to both counsel. Good morning. I believe counsel is here by video as well. Please proceed. May it please the court. My name is Kristen Cope of Melvinian Myers. I am here to represent Appellants Francine Shulman and her related entities. I'd like to reserve two minutes for rebuttal. Very well. Keep your eye on the clock, okay? Yes, Your Honor. Ms. Shulman is an elderly, successful farmer. She's here today. A group of defendants saw an opportunity to victimize her in a scheme that they had employed against multiple others before. They employed fraud, intimidation, and financial manipulation, repeatedly using the U.S. mail and wires, and stole both her life savings and business profits. Counsel, you're bringing claims under RICO, and are you bringing it under the property prong or the business prong? I take it this is only business. Your Honor, it is both, and that's an important distinction here. Ms. Shulman and her entity suffered injury to both, and obviously those terms are a little bit amorphous in the statute, and a lot of cases have recognized that often property is business property, so you can have a damage to both. But in this case, something that the lower court clearly overlooked, and just made a factual assumption that was clearly wrong from the pleadings, is that there is no alleged damages other than business profits, which is what the court assumed. If you look at the pleading, that's simply not true. What's the property damage? Because as I understood it, basically she wasn't able to buy the extra plot of land to expand her business. It was several things, Your Honor. That is one of them, and that is a significant piece of it. She did, before encountering the defendants, have a binding contract to purchase a very valuable farm nearby. But that one, she never did buy it, so that one seems clearly to be a business interest because you can't have damage to property that you don't own. Well, if you have a property right, Your Honor, in that contract that entitles you to own that property, that is also a property right. But I do just want to note that, yes, they stole income and profits from the business, and that was substantial, but that's not all. Before we get too far down this road into the RICO element of this, I'm interested in what the district court did in terms of standing. Yes, Your Honor. It didn't seem to be terribly clear to me whether he was articulating an Article III ruling or a statutory standing. Could you help me with that? I can try to, Your Honor. So I will agree that I don't believe that the opinion below is a bastion of clarity as to what the court's primary concern was. The court did say, in a pretty conclusory opinion, several very broad holdings, all of which I think are clear errors of law and need to be corrected. But to Your Honor's question about what the court intended to do, it said that Ms. Schulman, without really any citation to authority, had no cognizable injury because any remedy it could award would be a violation of federal law, would result in an illegal mandate. So I think what the court was really worried about and what it spent more of its time on was the redressability piece. The court below believed. So that's on both the Article III element as well as RICO, right? Well, Your Honor, the statutory standing piece, really under RICO, is only the first two prongs of what we would consider Article III standing, right? All right. Well, let's focus then on the redressability issue. So is it your view that your client, and let me just say for anybody that's interested, you know, anybody can empathize when somebody has allegedly been conned out of a lot of property. But we're dealing with a statute here, a troubling statute from this perspective. But we also have an issue of Article III standing and whether there is redressability. Will you give me your best argument for why your client has, let's start with, Article III standing? Absolutely, Your Honor. My client has Article III standing because, well, on the redressability piece, Your Honor, because almost every court, to consider the question, has held that where a party is seeking simply money damages for past economic harm, that is something that a federal court is entitled to grant. Why don't you give me some cases where you believe that has, in fact, occurred? I'm not talking about district courts. I'm talking about courts of appeal. Sure, Your Honor. Or the Supreme Court, of course. Yes, and I will tell you that I agree that most courts have not had a chance to consider this question. But there are two opinions that I think are very instructive to this court in terms of what can be done. Okay. The first is the Tenth Circuit's decision in Kenney. In Kenney, the court was addressing a very similar broad remedial federal statute, the FLSA, and a guard who worked in cannabis, made his money in cannabis, was helping to operate, secure, and inventory an active cannabis operation, sued and said, you owe me money that I've earned in working in cannabis. And the defendant said, you don't have a claim under this federal statute because you're asking for money earned in cannabis. And the Tenth Circuit denied that argument and said that the FLSA, just like RICO, is a remedial statute and applying it to the plaintiff did not conflict with the statute's purposes or the CSA. And, in fact, the court there said that the rule that should govern here, which is parties are not excused from complying with federal laws because their business practices are federally prohibited. Because we have so little time, let me just be sure I understand. So you're saying that from your reading of Kenney, they said the FSLA dealt with wages and because wages are a separate remedial statute, that doesn't create a problem with redressability because you can still do that. Is that right? Well, Your Honor, obviously under that statute you'd have to have statutory standing, but you'd also have to have Article III, which is redressability. And the court there had to decide, I can award someone money damages for money they earned in a cannabis operation from a federal court, and the court said that it could. Did Kenney analyze it under an Article III redressability analysis? I don't believe it actually used the words Article III, Your Honor, but it certainly did a full analysis and concluded that it could grant those remedies. The same thing I would point to this court's holding with regard to redressability specifically has not addressed this in the context of cannabis, but I think that this court's ruling would control in Basigi, which is the 2005 case. Which one? It's Basigi, B-A-S-S-I-D-J-I. Oh, yeah. It's 413 F3rd 928. It's in our brief. And that court declared the standard that should apply here, that an injury can be redressed by a federal court so long as the relief ordered does not mandate illegal conduct. That court also put it this way. You should consider whether a remedy exists that would not require a court to order a legal violation. And it's important to note— So for purposes—let's assume for a moment I'm a district judge, and I have to craft something. You've got a cannabis situation here. How do I conjure something where I can redress the grievance of the party without running afoul of, say, RICO? You're just saying as an isolated matter, if it's, say, money damages, courts can do that. So you don't have to get behind the specific redressability? Is that your argument? Yes, Your Honor. And, in fact, contrary to what the Applebee's brief makes it sound like, there's been a pretty broad consensus among the federal courts to consider this question. And almost all of them that have considered it have said, putting aside forward-looking relief, awards of equity damages, future profits, injunctions about what a party must do in actively operating a cannabis business, when it's just, I will award you money, money is fungible, and there is nothing violating RICO or the CSA to order money damages. And I could give you eight different cases in different contexts. Let me ask a quick question, Ms. Copia. What specific property interests does your non-cannabis-related injuries arise from? Well, Your Honor, our position, and I want to make sure I am answering your question, our position is that it doesn't have to be separate from the cannabis injuries. That's the point. If you were to look at SEVA and Kenny and Greenwood and Green Earth and Cush, Tarr, those all were damages that arose very closely and integrated with the operation of the cannabis business. And the courts all said, I can still award money damages. That does not order someone to violate the CSA because it is a money damages award. But to your question about what is not specifically tied to cannabis, there are several. So, Ms., in addition to the loss of what I would call the business profits, which is the most closely tied to the cannabis operations, they also took Ms. Shulman's life savings, which there's no indication, and it was substantial. There's no indication that money was earned from anything other than her legitimate business as an apple farmer and 60 years of work. Can you refer to the complaint and tell us exactly where that's alleged? I can't off the top of my head from my notes, Your Honor, but I can in rebuttal give you some citations to the record for those.  That's one reason I was trying to flesh out the difference between business or property, because it seems to me that if the damages are related to property, that seems to be almost solely related to cannabis. Now, your position is that that doesn't matter. But the property or the business interests, would the business interests be different? I guess your position would be it doesn't matter because money damages, as long as it's money damages, there's no issue here. It doesn't matter where that comes from. So two things to that, yes, Your Honor. You're absolutely right that our position is that all of these damages are things that can be redressed by the court and are cognizable under the clear broad statutory text of RICO as well as this court's clear and repeated precedents that we are to look at the property damages that are cognizable under state law. Okay, so just to encapsulate so we can get to the RICO part. For your purposes, the court had Article III jurisdiction here because all you have to look at is whether, generally speaking, a court can grant relief for those kinds of things. You don't have to look at the specifics in this case. Is that correct? No, Your Honor. I don't believe that that's what I am saying.  I apologize. Why don't you articulate it better, please? Okay, so I think when it comes to – there's two pieces that the court below sort of merged, right? There's the whether you have a cognizable injury, and there's no – there was no assertion that there was no injury here. It was simply your injury doesn't count because you're operating in CUNAVIX. Well, again, I think we've got this specter of RICO hanging over us. This is arguendo. If she can't get relief under RICO for a variety of reasons, it's still your argument that she can have Article III standing even though she can't get relief that she seeks under RICO. Is that right? Well, if we can't get relief under RICO, Your Honor, I'm unclear on what claim you would be seeking Article III standing for. Well, that's your burden. Tell me what you can do. I mean, what are you redressing? There has to be redressability to have Article III standing. Yes, Your Honor. I don't see any – that you've pled for anything but – at least it has survived to the appeal – but a RICO claim. And if, arguendo, you don't have relief under RICO, how can you have Article III standing? Your Honor, that is our position that we – in order to – you can't have Article III standing without having a specific claim to bring that under, obviously. You need a common law claim or a statutory claim. Our argument – and it's clear from the text, I think, of RICO – that we have a statutory claim. The first two elements – the elements of statutory standing for RICO are an injury in fact that was caused by the defendant's racketeering activity. That's really all we need to show standing. But you say these two claims have to go together. Just to put a finer point on Judge Smith's question, if we found that you did not have statutory standing under RICO, your position is that would also define whether you have Article III standing. You can't – meaning we could not write an opinion that said you have Article III standing, but you don't have RICO statutory standing. Your Honor, I think that's right, only because – and the only difference between – Article III standing is determined in part by what the injury is recognized under the underlying claim. So if you have an injury in fact for RICO, you have it for Article III. It is determined by that statute. And when it comes to – That's what we're struggling with here. You're assuming you do have standing for RICO, and there's no question. If you have standing for RICO, you've got standing for Article III. At least what I'm struggling with is how do you get to the RICO, however – how do you have Article III standing if you have no standing under RICO? Your Honor, is your concern about that I can address either the injury prong or the redressability piece? Redressability. The redressability piece, Your Honor. I think it's pretty clear that the redressability prong is only about whether the court is unable to fashion any relief that it would be capable of granting that would redress the harm. In this case, not just generally speaking. Correct, Your Honor. And in this case, there's lots of harms. First of all, setting aside the ones that may be a closer call, though we don't think that they are. Damage to her farm, which was significant. Theft of her home. By the time she got it back, her home was uninhabitable. Theft of her life savings. These are all cognizable damages regardless of the industry that they're in. When it goes to the actual business property damages, the loss of profits, the loss to the business, and the reputational harm and things like that, every court, all the eight courts that I just mentioned, all said if it's an award of money damages, that is something that under Article III is redressable. And I think the line that's been drawn by the courts is you cannot order forward relief, order someone to do something that the act would violate the CSA. But the payment of money does not. And if you look, for example, at the Tar case, a plaintiff was seeking lost profits when the person died, and they said, I've lost profits in operating my cannabis business. And the court said, yes, you can have those. I can grant those. Without violating CSA, that's redressable. The same thing is true in Cush's breach of contract claim. Both parties were in the marijuana industry, and they wanted money from their investment in a cannabis business. The court said, I can redress that. Kenny, FLSA claims, same thing with Green Earth, the insurance claim. They said, I've lost my marijuana plants and equipment operating my business. And the court said, not only am I going to recognize that claim, but that is a damage that I can redress as a federal court because these are injuries that are recognized by state law, and that's good enough for this court. Okay, we have a problem.  Yes, Your Honor. I see I am. What we're going to do is this. We're going to hear from government, and then we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. And so you can answer a judge's strange question, among others. Thank you, Your Honor. Very well. All right. Let's hear from government. I think your speaker is off. We can't hear you. I apologize. I forgot to unmute myself. My name is John Scholz. I represent the appellees and defendants in this matter. And I apologize. I said the government. I didn't mean the government. Sorry about that. No problem. So I will try and address the issues that were raised in the court's questions. First of all, the plaintiffs and appellants operated a cannabis farm that was illegal under federal law, under the Controlled Substance Act, because they were cultivating and distributing marijuana. They sought out the defendants because they wanted to expand their operation. The defendants were looking to engage in the operation because it's becoming legalized and more and more legalized under California law. So they entered into the partnership, and eventually it didn't work out for a myriad of potential reasons. Thus, the plaintiffs sought to get the profits out of it using the federal court system that they couldn't get because the business didn't work. Okay, Mr. Scholz, I've got a quick question for you. Do you agree that the plaintiffs have sufficiently pled Article III standing in this case? No, I do not. And you don't believe that they've sufficiently pled statutory standing? I do not. How do those two interrelate? Is there a different analysis for the redressability prong of Article III standing than there is for statutory standing under RICO? I really don't believe that there is. And the reason I say that is because the injury that they are seeking, which to be redressed about, is all about money stemming from the cultivation and distribution of marijuana, which is not legal. But what about if they have a bank account, and it turns out 50% of the money in that bank account ultimately came from the marijuana business, but 50% came from the apple business. If all that money was stolen, would it be redressable for the legal portion of that account? I do not believe that you can parse those things out because RICO is in public – I mean, it would be nice, I think, if you could parse out all the different monies that go into it that might be saved in an account. I think what we're talking about is the profitability – I'm sorry, Your Honor. I cut you off. Well, I mean, you seem to be saying, well, we can't figure out whether it was 50% exactly. But just say they were intermingled. I mean, is that the position that if, say, I have a – I get a $10 million inheritance, I put it into a bank account, and then I go sell $200 worth of cannabis, and I put that in the same bank account. Is that entire bank account not protectable under the law because 0.002% of it came from illegal business under federal law? Well, I don't think we're talking about bank accounts, really, in this case. Well, that's what – We're talking about profits. Hold on. What the plaintiffs – I mean, we can go look at the complaint. But what plaintiffs just said is that's one of their claims, is that their bank account was totally cleared out, and that bank account apparently was intermingled. I mean, I don't know whether that's accurate or not, but that's my question, is would that be a redressable harm if it's true that the entire bank account was cleared out? I do not think so. And the reason why I say that is because the acts that led to this bank account being taken are the cultivation and distribution of marijuana, and that is an illegal operation under federal law. It's not a redressable action. But with respect, counsel, I don't think you're answering my colleague's question. I'm sorry. If we even stipulate arguendo that anything related to the cannabis business is in a different situation. But in this case, Ms. Cope indicated that Ms. Shulman put her life savings into this as well, which were generated from other sources, not from the production or sale of cannabis, but from other things, the apple orchards or whatever else. So for purposes of what my colleague mentioned, if you have half of a fund, a money fund, and whether that happened or not in this case is not really material, if you have half of the money fund and it's traceable, why couldn't the court order relief as to that portion of the money? I think you have to look at the mechanisms by which they're alleging how the money was taken, which is racketeering under federal law. They're trying to use racketeering, yes, to get money damages. I think it's for future profits, which is $60 to $67 million that they're alleging in their complaint. You have to look at that and see where the mechanism by which the alleged theft took place. I think that's what we're struggling with, and maybe we need to go back to what the alleged theft is. Because the alleged theft is a joint business that was set up with the sole purpose to do cannabis. Is that correct or not? Yes, that is correct. So your position is even if plaintiff brought non-cannabis-related proceeds and put that into, is it Iron Angel is the company that your clients allegedly swindled her out of? Your position is your clients are not alleged to have gone and taken her personal bank account. They took funds allegedly from Iron Angel, and that's all that the allegations are aimed at. Is that correct? That's our position, yes. It's a one, and it goes to the other elements of RICO, which is the statutory elements, that they're alleging one single thing, which is to take the business away from the plaintiff, plaintiffs if you look at the entities. And that includes whatever the business was, which includes monies that it had, or profits that it was going to receive or didn't receive or would receive down the road. That's their allegation. So from your perspective, their complaint alleges facts. It really doesn't matter the source of the money that was in Iron Angel, or in that case that's your client. But their money was, let's assume that's all good money in the sense of under the CSA it's not tainted. From your perspective, it doesn't matter because they're saying this whole thing was for a marijuana enterprise, therefore it's tainted under RICO. And from your perspective, the redressability element of Article 3 is also affected here because you can't get relief whether or not the funds were originally, in quotes, good because it's tied up in the criminal enterprise. Is that right? That is correct. That's our position. Go ahead, please. I was going to say, so as you've heard, your opposing counsel suggests that before we even get to the RICO, because there have been courts, and certainly there have been some district courts, you've got the Tenth Circuit case, the Kennedy case, and so on, that seem to suggest that as long as you can craft a judgment that doesn't require the court to order an illegal activity, it's still okay. And I gather you're saying anything related to this business, whatever the source, however the court crafts it, is tainted, and therefore there is no redressability. Is that right? I believe that's the case under RICO, and they have a relief under state law for non-RICO claims, and they're pursuing their state law claims, which the Besiege case cited by counsel and briefed says that if there's available relief, which there is in state court, then that's possible. But what they're seeking is, and I analogize this to the fruit of the poisonous tree, that if something is illegally searched and then you find all this other evidence because of your illegal search, it's tainted. Now, when they're growing and distributing marijuana, which is the heart of what their business was, the relationship, everything on that property, everything related to their joint operation, they were living on the property, or my clients were living on the property, anything that they claim was damages all spins out of this illegal operation under federal law. And the cases that they cited were not SEVA, for example, MAN, which were the FSLA cases, were not considering cultivation and distribution of marijuana. And they expressly say that in their analysis. So it's very important, I believe, to look at how the courts are distinguishing the growth and distribution of marijuana from these other situations, which may have a connection to the marijuana industry. I'm not going to deny that somebody driving or delivering for marijuana couriers, there's a connection there. But it's not the same thing as what was going on here between these plaintiffs and the defendants. The plaintiffs began this operation. They solicited my clients to join them in it. Now they want to use this racketeering theory to get the profits from something that they participated in. I believe that in our brief, there's plenty of citations that says you're not supposed to use RICO to benefit. RICO should not be used to benefit somebody through an illegal operation. Counsel, let me ask you this. As you know, there are a number of district courts within our circuit that have adjudicated cannabis-related contract cases. Given your approach, would all of those cases be reversible? I don't think all of the cases disagree with my position. Okay, but they did. For the Jay Lilly case, for example. They dealt with marijuana-related contract claims, did they not? There was relationship. As I said, there's a delivery case, there's FLSA cases, there's different things. But they're not dealing with specific direct violation of the CSA, which says you can't distribute and cultivate marijuana. Most of these cases cited in the briefs do not address cultivation and marijuana. And the ones that do come back and say it's cultivation and marijuana. And find, like the district court case in our situation, that you can't create a redressable injury. I can't give you the benefits from this violation. So even though there may be cases where you can segregate out activities that have been conducted, at least in tangent with cannabis businesses, if it deals with the cultivation, sale, and so on of marijuana, there's just no way to extricate it. Is that your perspective? That's my perspective, yes. I believe it's supported by the cases that have been cited in all the briefings and the underlying law in motion. All right. I believe it's also supported by public policy, which is the fact that if the legislature chooses to, and legislative dictates, they have chosen not to take marijuana off the Schedule 1 and make the cultivation of it a violation of the schedule, the CSA. I believe that what they're looking for is for this court to legislate out of that and do that. And also not take that away from the legislature. When these cases that are saying that, you can't cultivate under federal law, you can't cultivate and distribute marijuana. And the court is empowered to enforce that, and I believe should. I think if this was a tangential case, we may be making different arguments. Okay, Mr. Schultz. Under these different theories or cases that are out there. I've got a question for you. If we agreed that plaintiffs have standing, on what other grounds should we affirm the district court? Do you have any response to that? Standing? Yes, I don't believe that they met the elements of RICO. I believe it wasn't necessarily fully addressed in the district court's opinion, because I believe it relied on reducibility and standing issue and did not develop that. But no, I don't believe that they established a continuity element. Okay. I don't believe that they've established. I believe that the unclean hands, that they're coming to court with unclean hands, says that if they want to get profits out of an illegal business operation and use racketeering, they should be coming with clean hands. They are the ones that are solicited to racketeering enterprise. If they're alleging there is racketeering, they're the ones that began it, operated it, and solicited my clients to join them in it and grow it. Other questions? So I don't believe that they can pursue that. Just one other question. Do you think the plaintiffs have a remedy in state court? I can't hear you all. You can't hear me? Okay. You've heard me before. There's something down there that says the microphone's not working. I don't know whose is not working. Okay. Is that his end? Okay. Judge, can you hear me? Yeah, we can hear you. Yeah, we can hear you, but you said you can't hear me now. Zoom call. Please stand by. I'm going to disconnect the courtroom and reconnect it to the call. Okay. They're going to reconnect us. I'm going to read the clause again. No, that's okay. What would we do without Zoom? We know we have an invalid meeting ID for one thing. Can the audience see? I think so. Over there. Oh, okay. Gotcha, gotcha. Okay. Okay.  Okay.  Yeah, let's see if we can. So we can move forward. Okay. Recording in progress. Judge, can you hear me now? Yes. We can hear you. Can you hear me? Yes, Judge Drain. I can hear you as well. So we have audio back from the courtroom. Okay. Very well. Do you want to finish answering Judge Drain's question, please? Yes. I'm not sure where we were cut off, but I do believe that the elements were not met for actually statutory RICO. I don't think they met the continuity element because they were trying to steal the business, which is one idea. There's one person, Ms. Shulman. Okay. But I guess part of my point is, isn't the marijuana matter legal under California law? I'm sorry. Legal, did you say? Yep, permissible, the production and growth and sale, all those items. Under California law, yes. Okay. That's my only point. That's my only point. You've answered my question. Thank you. Very well. Thanks to everybody for your patience. This doesn't happen very often, but when it does, we just deal with it. Okay. Thank you very much. So let's hear from Ms. Cope. We'll give you a couple of minutes to respond. And at least from my perspective, I'd love to hear you talk about the RICO element. We didn't get much to that. What's your best argument that your client has RICO statutory standing? Your Honor, our best argument is the purpose and text of RICO itself and this Court's precedent. So RICO specifies in Section 1964C that it is meant to be applied for any person injured in his business or property. That is very broad language. Multiple courts have basically found that the only real category that seems to be excluded is injuries to person. With respect, RICO was passed in 1970. At the same time, it defined marijuana as basically a criminal enterprise. It just doesn't make any sense to me, unless you can convince me otherwise, that RICO, when they used the words business or property, intended to include what they then considered in that time period a criminal enterprise. What's wrong with that? Two different things, Your Honor. First, that's something that the district court below said and said it doesn't seem. In fact, I think its language was it seems implausible that RICO was designed to address this. And as you know, the U.S. Supreme Court has repeatedly said RICO is broad. They meant it. And courts that try to read in narrow limitations are constantly overturned. The court said in Sedima, to exactly what Your Honor just pointed out, the fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth. And not only does that statute has been applied in lots of contexts that may not have been existing at the time RICO was passed, but it still applies. That's even more true when you have this court's multiple rulings in Diaz and in Nucal that when ruling on and interpreting that broad language about property or business is defined by state law. Diaz was an en banc decision that has been repeatedly reaffirmed and held in five other cases that I know of from this court. And California state law says that all of these injuries and this entire business are valid. Valid property rights, licensed, taxed, regulated, recognized. And so that injury is cognizable under RICO because RICO says so and this court has said so. Okay. We're over time, so let me ask my colleagues. Does either one have additional questions? I'm good. Thank you. I'm sure we could talk a lot. Yes, Your Honor. And I'm sure you would say brilliantly. If I might, I just want to answer Judge Strain's question about the record citations. Okay. Go ahead with that. Judge Strain, if you'll look at our brief at page 49, there's a section on this, as well as our reply brief at page 19 and 20. And excerpts of the record show that in paragraphs 154, 159, 160, and 161, they plead allegations of harms other than to the business. Very well. Thank you. Thank you for your argument to both counsel. This is an important case, and we appreciate your help in it. The case just argued is submitted.
judges: SMITH, NELSON, UNKNOWN